**LINWOOD STATE BANK, a Corporation, Plaintiff-Respondent,**

v.

**Laclede LIENTZ, Defendant-Appellant,**

**W. C. Teghtmeyer, Charles W. Marsh, Spencer Norton and Donald G. Rumsey, Defendants,**

and

**Rodney HILL, Third-Party Defendant-Respondent.**

No. 52168.

Supreme Court of Missouri,

Division No. 1.

March 13, 1967.

Motion for Rehearing or to Transfer to Court En Banc Denied April 10, 1967.

Alvin D. Shapiro, Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, for respondent.

Billy S. Sparks, Kansas City, Linde, Thomson, VanDyke, Fairchild & Langworthy, Kansas City, of counsel, for appellant.

WELBORN, Commissioner.

The Linwood State Bank sued the appellant here, Laclede Lientz, and four coguarantors to recover $44,237.89 upon their guaranty of obligations of The Lientz Company, Inc. Appellant Lientz denied liability on the guaranty agreement and cross claimed against his four coguarantors for any amount for which he might be found liable to the bank. Lientz also filed a similar claim against third party defendant Rodney Hill. The trial court directed a verdict in favor of Hill. A jury found in favor of the bank and against the five coguarantors in the sum of $43,114.38 and in favor of Lientz in a like amount against his four coguarantors. Lientz is appealing from the judgment in favor of the bank against him and from the judgment in favor of Hill upon Lientz's claim against him.

Lientz Company, Inc., incorporated in 1958, was engaged in the business of manufacturing power burners. Appellant, Laclede Lientz, had been president of the corporation prior to 1960. After that time, when he disposed of his controlling stock interest, he was a director of the company. The other defendants, W. C. Teghtmeyer, Charles W. Marsh, Spencer Norton and Donald G. Rumsey, acquired the controlling interest in the corporation. Teghtmeyer, Marsh and Norton became the executive officers of the corporation and, along with Lientz, members of its board of directors.

In 1960, the corporation negotiated a Small Business Administration loan through the Southgate State Bank in Kansas City. The Lientz directors executed a guaranty agreement in connection with this transaction.

In August or September, 1961, the corporation began borrowing at the Linwood State Bank. Originally the borrowing there was small. When the corporation required additional funds to carry out a $300,000 contract, the Linwood State Bank, according to the testimony of its officers, agreed to advance the corporation the necessary credit on the basis of a purchase order assignment under the $300,000 contract and the execution by the directors and principal shareholders of the corporation of a guaranty agreement. The guaranty agreement, on which this action was based, was signed by Teghtmeyer and Norton in the presence of Mr. Price, the bank president.

Teghtmeyer and Norton took the guaranty form with them and obtained the signatures of Marsh, Rumsey and Lientz and returned the signed instrument to the bank at around its date, January 11, 1962.

Credit was extended by the bank to the corporation from time to time, with payments being credited against the indebtedness from time to time.

In March, 1963, Lientz and members of his family contracted to sell to the corporation the remainder of their stock holdings. The contract required that within six months the corporation change its name by eliminating the word "Lientz." In December, 1963, as a result of a lawsuit by Lientz, the corporation changed its name to Technology, Inc.

In December, 1963, an involuntary petition in bankruptcy was filed against the corporation. On December 31, 1963, the bank made demand against the five guarantors for the $43,114.38 principal amount, represented by two demand notes, of the corporation's indebtedness to the bank. Upon failure of the guarantors to make payment, this action was filed.

Marsh, Norton, Rumsey and Teghtmeyer, by their pleadings, admitted the execution of the guaranty. Lientz's answer denied execution of the guaranty. However, by a pleading denominated a counter claim, he alleged that he executed the guaranty upon the representation that it would be delivered to the bank only in connection with the bank's taking over the Southgate Small Business Administration loan, which the Linwood State Bank did not do; denied that the corporation was authorized to borrow from the Linwood State Bank; alleged that the transactions between the Lientz Company and the Linwood State Bank were the result of the actions of Rodney Hill, an officer of the bank whom the bank had caused to be placed on the board of directors of Lientz. He named Hill as a third party defendant and sought judgment against him. Lientz also cross claimed against his coguarantors. The other cross claim defendants filed no responsive pleading.

The trial resulted in a directed verdict in favor of Hill on Lientz's third party claim and jury verdict in favor of the bank on its claim against all defendants and in favor of Lientz on his claim against the coguarantors. Only Lientz has appealed, complaining of the judgment favorable to the bank and Hill.

■ On this appeal, Lientz's first contention is that he was entitled to judgment on the bank's claim because there was no evidence that the bank communicated to him its acceptance of his offer of guaranty. Without getting into the question of whether or not the guaranty here was an offer of guaranty or an absolute contract of guaranty (see 24 Am.Jur., Guaranty, § 37, p. 899), the question of acceptance is eliminated by the terms of the instrument whereby the guarantors waived any notice to that effect. See Industrial Bank & Trust Co. v. Hesselberg, Mo.Sup., 195 S.W.2d 470, 473–474 [4–11]. The language of waiver is clear as contrasted with that relied upon in Ladd & Bush v. Hayes, 9th Cir., 105 F.2d 292, cited by appellant.

Appellant's second objection is that the borrowing by the Lientz corporation from the bank was not authorized, as required by the corporation's bylaws, by a resolution of the corporation's board of directors. Lientz argues that the borrowing was therefore illegal, that Hill, as a director of Lientz, was chargeable with knowledge of the lack of proper authorization of the borrowing and that by virtue of Hill's official position with the bank, the bank was likewise chargeable with notice of the lack of authority. Lientz also claims that he brought the lack of proper authority to Hill's attention.

Lientz Company, Inc.'s bylaws prohibited incurring indebtedness "except by resolution of the Board of Directors, duly passed." No record of the passage of a resolution

authorizing borrowing from Linwood was found in the Lientz Company minutes. However, the bank did produce from its file what had been presented to it as, and appeared on its face to be, a certified copy of a resolution of the Lientz directors, enacted August 9, 1961, authorizing the president, secretary or treasurer of the corporation to procure loans from Linwood. The instrument bears the signatures of Teghtmeyer as President, Norton as Treasurer and Marsh as Secretary. It is certified by Marsh as a true copy of a resolution passed by the Lientz directors and also by Norton. Appellant Laclede Lientz's signature is not on the document and he denied knowledge of the passage by the board of directors of any such resolution.. The Lientz Company's minute book contained no record of a directors' meeting on August 9, 1961.

■ This deficiency, however, may not be taken advantage of by appellant. He acknowledged that he was aware of the borrowing from Linwood and that the funds borrowed were employed for corporate purposes. He also acknowledged that he did not inform the bank that the borrowing was not properly authorized, stating, "I wasn't there to protect the Linwood State Bank."

Lientz Company, Inc., would not be permitted to avoid the obligation on the grounds of lack of authority of its officers. The law in this regard is stated in Farmers & Merchants Bank v. Burns & Hood Motor Co., Mo.App., 295 S.W.2d 199, 202, as follows:

"Although the instant note was concededly executed by the president of defendant company, in the absence of express authority from the board of directors, and therefore contrary to the provisions of the applicable by-law, we must nevertheless hold that the note constitutes a binding obligation. This follows because the law is well settled that where, as here, a corporation with knowledge of the act has ratified it, or has accepted the consideration of the note, it will be as much bound as if the note had been originally executed in exact conformity with the provisions of its by-laws."

■ See also Wilks v. Stone, Mo.App., 339 S.W.2d 590, 595; Milligan v. G. D. Milligan Grocer Co., 207 Mo.App. 472, 233 S.W. 506, 508; 2 Fletcher, Cyclopedia of Corporations, § 430, p. 297; 19 Am.Jur.2d, Corporations, § 1255, pp. 661–663. The appellant-guarantor stands in no better position than the debtor, and, therefore, cannot avoid the obligation on this ground. Pulitzer Publishing Co. v. Chitwood, Mo.App., 9 S.W.2d 251, 252 [2]; 38 C.J.S. Guaranty § 43, p. 1192.

■ Appellant contends that the fact that Hill, an officer of the bank, was a member of the Lientz board at the time of the borrowing makes inapplicable the rules above referred to.

Transactions involving corporations having directors or officers in common may present problems. See Annotations "Validity of contract between corporations as affected by directors or officers in common," 114 A.L.R. 299, 33 A.L.R.2d 1065. Hill was elected to the Lientz board of directors on January 13, 1962. The borrowing from the bank was not his idea as a member of the Lientz board. The arrangements for the borrowing had been made prior to his election to the board. No evidence was presented as to the role of Hill in the transactions which followed between the bank and the corporation, other than Hill's testimony that he represented the bank when the notes which are the basis of the plaintiff's claim were prepared by him and signed by Norton on behalf of the corporation. There is no showing whatsoever that the transactions between the bank and the corporation were unfair. See 19 Am.Jur.2d, Corporations, § 1307, p. 714. Appellant points out no evidence that Hill, as director of the corporation, took advantage of his position on the Lientz board to benefit the bank at the expense of the Lientz corporation.

■ Appellant argues further that, by reason of Hill's membership on the Lientz board, the bank is chargeable with knowledge that its loans to Lientz had not been properly authorized. According to appellant, the bank's knowledge thereby acquired of the absence of authority for the loans would prevent its recovery against the borrower and precludes recovery on the guaranty.

Appellant states that he protested repeatedly at the Lientz directors' meetings that the borrowing from the Linwood bank was illegal. However, insofar as the evidence shows, those protests were based upon Lientz's contention that the Southgate Small Business Administration loan prohibited the additional borrowing. On his deposition, he stated that he had not called the attention of any officer or representative of the Linwood bank to the fact that there was no proper corporate resolution authorizing such borrowing. At the trial, Lientz stated that he did not tell the Linwood State Bank that there was no authorization of the borrowing because "I wasn't there to protect the Linwood State Bank." Since Hill was, as Lientz knew, an officer of the Linwood State Bank, we must take his testimony to mean that he never told Hill of the lack of authority. The fact that he protested the borrowings on other grounds would not put Hill on notice about the resolution.

Lientz would charge Hill with constructive knowledge of the lack of authority. He argues that Hill was chargeable with knowledge of the requirements of the company's bylaws, as he undoubtedly was. 18 C.J.S. Corporations § 180, p. 590. However, the knowledge of the bylaws is not what appellant seeks to impute to Hill. It is knowledge that what had been presented as evidence of compliance with the bylaws had not been properly enacted. The circumstances surrounding the preparation of the purported resolution of the Lientz directors does not appear. However, on its face, it purports to show due enactment of the resolution by the board of directors and

proper authorization for the borrowing. It shows that the resolution was adopted August 9, 1961, long before Hill became a member of the Lientz board, and before he had any dealings whatever with the Lientz account. In such circumstances, Hill should not be charged with a duty to examine the corporate records or with knowledge of what such examination would have revealed. Furthermore, since Hill's knowledge would be constructive only, it is doubtful that such knowledge would be imputed to the bank. See 1 Rest. of Agency (2d), § 277, p. 604.

■ Appellant's next contention is that the forms of verdict submitted to the jury by the court did not permit a finding in favor of the plaintiff against less than all of the defendants. Appellant argues that the jury evinced a desire to find in his favor upon the bank's claim, but that the court's instructions and the forms of verdict submitted did not permit the jury to do so. Appellant states that the guaranty instrument, by its terms, creates several liability on the part of the guarantors and, therefore, plaintiff was required to establish its claim against each of the defendants, and each of the defendants might have urged a separate defense, valid only as to himself. Appellant argues that he did present a valid defense of conditional delivery of the guaranty as to him and other defenses which the jury might have found valid only as to him. Appellant also points out that he was the only guarantor who sought to establish such defenses at the trial and therefore the court should have permitted the jury to give separate consideration to his liability.

The guaranty agreement provided that its obligations were "the several obligations and agreements of each of the undersigned * * *." However, appellant has ignored the language following that which he relies upon, to-wit: " * * * but at your option any or all may be enforced against any or all of the undersigned jointly." That option was exercised by plaintiff in its pe-

tition wherein it alleged that the defendants had "personally guaranteed to the plaintiff, *jointly and severally,* the payment of any and all sums lent or to be lent by the plaintiff to The Lientz Company, Inc." The prayer of the petition prayed *"joint and several* judgment against said defendants * * *." See §§ 431.140 and 431.150, RS Mo 1959, V.A.M.S.

In this action to enforce the joint and several liability of the defendants, Lientz was allowed to present defenses applicable to himself only and also, as he endeavored to do, applicable to the liability of all of the guarantors. If, however, he failed to establish his personal defenses, the jury could not have, consistently with the evidence presented upon the liability of the defendants, have returned a verdict in favor of Lientz alone. If, therefore, Lientz did not present evidence justifying the submission of his personal defenses, the verdict form instruction cannot have been prejudicial to appellant.

■ As above pointed out, appellant's alleged defenses based upon the failure of the bank to notify him of its acceptance of the guaranty, upon the absence of a properly adopted corporate resolution and upon the dual role of Hill are without merit. Lientz also attempted to submit a defense of waiver, which the court properly rejected, the defense not having been pleaded (Civil Rule 55.10, V.A.M.R.), and there being no evidence to support it.

■ The defense of conditional delivery of the guaranty was based upon the testimony of Lientz that he signed the guaranty at Norton's request and upon Norton's assurance that the guaranty would be delivered to the Linwood State Bank only if that bank took over the Southgate Small Business Administration loan. However, such condition must have been known to the bank or the bank must be chargeable with notice of it if failure to comply with the condition is to permit Lientz to avoid liability. 24 Am.Jur., Guaranty, § 39, p. 900.

The bank officials who testified did state that there was at one time some discussion about the Linwood bank's taking over the Southgate loan, but this was not done. However, Mr. Price, the Linwood president to whom the guaranty was delivered, stated categorically that no conditions were attached to the delivery of the instrument. There was no other testimony pertaining to the communication to the bank of any condition upon delivery of the guaranty.

Appellant argues that the jury could have found knowledge on the part of the bank of the condition under which Lientz executed the guaranty from Hill's silence when Lientz inquired about the corporation's borrowings. We fail to see where such circumstances would support the inference which appellant would draw.

Appellant also points to Hill's failure to make any reference to the guaranty to Linwood when, in March, 1963, while Hill was on the Lientz board, the corporation contracted to purchase the balance of Lientz's stock. This silence is allegedly significant in view of the reference in the contract for the sale of the stock to the fact that Lientz and others had executed guaranties in connection with the Southgate loan. Again, we fail to see how the conclusion which appellant would draw may be obtained from such fact. The contract did recite that the Lientz stock had been pledged in connection with the Southgate loan and a guaranty executed in connection with the transaction. However, there would appear to have been no reason to refer to the Linwood transaction, which did not involve any sort of pledge of the guarantors' stock in the corporation.

■ Appellant finds error in the form of submission in that, according to him, it permitted the bank's counsel to argue that an inference unfavorable to Lientz might be drawn from the failure of his coguarantors to testify. However, the court did not so rule. It sustained appellant's original objection to such argument. One

objection to plaintiff's counsel's remarking on the failure of Rumsey, although present in the courtroom, to testify, was overruled. However, error in that ruling is not here assigned, and we cannot presume that the court's ruling was based upon its form of verdict instruction.

■ Appellant also argues that the form of jury instruction permitted evidence and admissions properly applicable to only one defendant to be considered as to all. His four coguarantors did admit that the balance owed by the corporation to the bank was $43,114.38. The appellant made no such admission, although he in no way contested the bank's documentary evidence of the amount owed. However, when the admissions of the four codefendants were offered, appellant made no request that the admissions be given effect only as to those four defendants. Furthermore, no objection was made to the bank's attorney's use of these admissions in final argument. Appellant may not now relate such admissions and argument to the form of jury instruction and predicate error thereon.

[11] He also points to the fact that by virtue of the jury verdict form instruction, statements by Norton regarding the delivery of the guaranty might have been considered by the jury against appellant. However, when the evidence was presented, it was limited in its application to Norton alone and the jury advised to recall such limitation in connection with the closing argument.

■ Appellant also attacks the verdict forms submitted on the grounds that as to him the jury might have concluded that the plaintiff failed to carry its burden of proof and that the jury was entitled to consider separately the proof as against each defendant. Lientz acknowledged that he signed the guaranty. In view of such acknowledgment, the jury could not have consistently found against the other guarantors and in favor of Lientz. Therefore, the court was not required to submit the verdict form prescribed by MAI 32.05.

Appellant advances numerous objections to the plaintiff's verdict-directing instruction. Many of the objections repeat the theories advanced in support of allegations of error previously considered. Our finding of lack of merit in them is equally applicable to the reliance upon such theories in connection with Instruction No. 2. We will not consider them separately with respect to this instruction.

■ Plaintiff's verdict-directing Instruction No. 2 reads as follows:

"The Court instructs the jury that if you believe from all the evidence that the defendants executed the guaranty which is in evidence and that said guaranty was unconditionally delivered to the plaintiff and that the plaintiff relying on said guaranty thereafter extended credit and loaned money to The Lientz Company, Inc., in varying amounts from time to time and there is now due and owing by The Lientz Company, Inc., to the plaintiff the sum of $43,114.38, then your verdict must be for the plaintiff and against defendants for such sum, with interest thereon at the rate of 6% from February 21, 1964."

Appellant contends that the instruction does not contain a complete statement of the ultimate facts necessary in order to sustain a verdict for plaintiff. He points to the absence of any required finding of the date of delivery of the guaranty. There was no evidence of a time of delivery other than at or about the date of the guaranty. Appellant's suggestion that the guaranty got into the bank's possession in November, 1963, when Hill got the Lientz file in the Southgate Small Business Administration loan is pure conjecture, and wholly contrary to all of the testimony of delivery of the guaranty at or near January 12, 1962. In any event, the instruction did require the finding that the bank extended credit to Lientz after the delivery of the guaranty and the amount of indebtedness thereafter incurred. These are the basic ultimate facts of liability and the instruction adequately set them out.

■ We find no merit in appellant's contention that the instruction improperly assumes that the credit was extended in reliance upon the guaranty. We find that the instruction sufficiently required a finding to such effect and did not improperly assume such fact.

■ Appellant also complains that the instruction ignores Lientz's defenses. However, we have previously dealt with such defenses and concluded that they were not established. Therefore, plaintiff's verdict-directing instruction was not required to allude to them.

■ Appellant complains of Instruction No. 3, offered by plaintiff and given by the court. Examination of this instruction shows that it was probably intended as a converse of defendant Lientz's defense of conditional delivery. The court did not give the conditional delivery instruction offered by Lientz.

The instruction tendered by defendant on the subject wandered into the area of fraud and would have been erroneous even though there had been evidence to support the claim of conditional delivery. Since the defendant's instruction on the issue had not been given, there was no occasion for plaintiff's converse instruction on the issue. However, in view of our conclusion about the lack of evidentiary basis for the defense in any event, the instruction could not have prejudiced the appellant.

Appellant's next assignment of error is again interrelated with his contention that the jury should have been entitled to consider his obligation separately. Lientz's verdict-directing instruction on his claim against the four cross claim defendants told the jury that their verdict in Lientz's favor under the instruction should be the same as any amount found in favor of plaintiff. (Inasmuch as the cross claim defendants have not appealed, we are not concerned with the basis of liability which Lientz submitted.)

■ The jury returned a verdict in favor of the bank and against the defendants in the amount of $43,114.38 and in favor of Lientz and against the cross claim defendants for $8,622.88. Counsel for appellant objected that the verdict on the cross claim did not follow the instructions. A lengthy colloquy ensued, involving the court, the attorneys and the jury foreman. However, the upshot of the matters about which appellant now complains is that the jury was instructed to resume its deliberations and to submit a verdict in accordance with the court's instructions. The jury did so and eventually returned a verdict in favor of appellant on his cross claim in the amount of the recovery by plaintiff. We fail to see how appellant could have been prejudiced by the matters complained of. In fact, he was benefited.

Again, appellant endeavors to relate the entire incident to his contention that the form of jury verdict submitted was erroneous. We need not again consider that issue.

■ Appellant complains of the directed verdict in favor of Hill. What we have said previously about the lack of basis for any claim against Hill is sufficient to dispose of this contention. Appellant offered an instruction which would have bottomed liability by Hill on the proposition that he "put his relationship as officer of the plaintiff ahead of his duties as Director of Lientz Company, Inc., and violated his fiduciary relationship of a Director." There simply was no evidence to support such a theory of liability.

The assignments of error based upon the court's refusal of appellant's instructions offering defenses based upon lack of notice of acceptance of the guaranty by plaintiff and waiver are adequately covered by our discussion of the unavailability of such defenses. Finally, the appellant complains of the refusal of his instruction based upon Hill's alleged constructive notice of the absence of a corporate resolution authorizing the borrowing by Lientz. Our

previous discussion of this issue disposes of this assignment of error.

The judgment is affirmed.

HOUSER and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.